[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE (#105)
This action comes before the court on the defendant's motion to strike the first and second counts of the plaintiffs complaint dated November 19, 1999. For the reasons stated below, the defendant's motion to strike is denied.
 I FACTS AND PROCEDURAL HISTORY
The plaintiff, Thomas Fallo, the executor for the estate of Lena Meriano, alleges the following facts in his complaint. The defendant, McLean Association, Inc. doing business as McLean Assisted Living Services (McLean), is an assisted living services agency which provides personnel and assisted living services to managed residential communities for the elderly. McLean entered into a contract to provide supervisory, CT Page 9878 evaluative and personnel services for Village Gate of Farmington (Village Gate) and its residents.
On February 4, 1998, McLean, through its employees, conducted an evaluation of Meriano and determined that she could safely and appropriately be placed at Village Gate. On March 1, 1998, Meriano was admitted to and entered Village Gate as a resident. On March 2, 1998, Meriano entered into a contract with McLean for assisted living services at Village Gate, including but not limited to the "establishment of a safe plan of care for 24 hours with direct hands on care not exceeding 1 1/2 hours a day." (Complaint, November 19, 1999, Exhibit A, p. 1.) At the time of Meriano's admission, and at all times thereafter, McLean had knowledge that Meriano was disoriented, anxious and prone to wandering throughout the Village Gate facility. On March 9, 1998, at approximately 8 p.m., Meriano wandered from her room, down a hallway and entered an unsecured stairwell. Meriano fell down the stairs, fracturing her shoulder and ankle.
On December 3, 1999, the plaintiff filed the present complaint. Count one alleges that McLean was negligent in that it: failed to adequately and sufficiently evaluate the needs of Meriano; failed to take adequate precautionary measures to prevent Meriano from failing; failed to adequately monitor and supervise Meriano; failed to properly restrain Meriano from wandering into dangerous areas; failed to adequately train, educate and supervise its employees; failed to properly secure entry into the stairwell; failed to properly place an alarm on the door to the stairwell; left Meriano unattended, unmonitored, unrestrained and unsupervised; and failed to provide sufficient staffing to supervise Meriano. Count two alleges that McLean breached its contract with Meriano in that it: failed to take adequate precaution to prevent Meriano from falling; failing to adequately monitor and supervise Meriano; failed to properly restrain and otherwise prevent Meriano from wandering into dangerous areas of the facility; failed to adequately train and educate its employees on the risks of falling and preventative measures; failed to properly secure entry into the stairwell; and leaving Meriano unattended, unmonitored, unrestrained and unsupervised.
On August 3, 2000, McLean filed the present motion to strike both counts of the plaintiffs complaint on the ground that the plaintiff has failed to file a certificate of good faith inquiry as required by General Statutes § 52-190a. Accompanying its motion to strike, McLean also filed a memorandum of law. On March 7, 2001, the plaintiff filed an objection to McLean's motion to strike. In response, McLean filed a reply memorandum of law in support of its motion to strike on April 6, 2001. The court heard oral argument at short calendar on April 30, 2001, and after reviewing the pleadings submitted by the parties concerning the CT Page 9879 motion, now issues this memorandum of decision.
 II STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "The role of the trial court [in ruling on a motion to strike is] to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 378,698 A.2d 859 (1997). The court must "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Eskin v. Castiglia, 253 Conn. 516, 522-23, 753 A.2d 927
(2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Doe v. YaleUniversity, 252 Conn. 641, 667, 748 A.2d 834 (2000). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions
stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. United Technologies Corp., supra, 240 Conn. 588.
 III DISCUSSION
McLean moves to strike both counts of the plaintiff's complaint on the ground that the plaintiff failed to file a good faith certificate pursuant to § 52-190a (a).[1] McLean argues that § 52-190a
requires the filing of a good faith certificate in a civil action against a health care provider and that it is a health care provider as defined by General Statutes § 52-184b[2] . Furthermore, McLean argues that the allegations in this case necessitate the presentation of expert testimony as to the standard of care for medical assessments and decision-making regarding the need for monitoring, supervising and restraining Meriano. McLean contends, therefore, that the plaintiff's allegations constitute medical malpractice and a good faith certificate should have been filed. In opposition, the plaintiff argues that a good faith certificate is unnecessary because the issues are questions of CT Page 9880 ordinary negligence and may be determined by a trier of fact without expert testimony.
"The complaint or initial pleading [of a claim of negligence against a health care provider] shall contain a certificate . . . of the attorney or party filing the action that [a] reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant." General Statutes § 52-190a (a). "[T]he failure to attach a certificate of good faith pursuant to § 52-190a subjects the case to a motion to strike the complaint . . . for failure to state a claim upon which relief can be granted, but that . . . defect is curable by a timely amendment filed pursuant to Practice Book [§§ 10-44 or 10-59]."Gabrielle v. Hospital of Saint Raphael, 33 Conn. App. 378, 384,635 A.2d 1232, cert. denied., 228 Conn. 928, 640 A.2d 115 (1994).
A good faith certificate is required in order to maintain a medical malpractice claim. See Yale University School of Medicine v. McCarthy,26 Conn. App. 497, 501, 602 A.2d 1040 (1992). A good faith certificate is not required, however, in cases against health care providers sounding in ordinary negligence. See Mason v. Rockville General Hospital, Superior Court, judicial district of Tolland at Rockville, Docket No. 068416 (January 19, 2000, Sullivan, J.), Dorvilus v. Donovan, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 157928 (May 26, 1999, D'Andrea, J.).
"The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.) Trimel v. Lawrence Memorial HospitalRehabilitation Center, 61 Conn. App. 353, 357-58, 764 A.2d 203 (2001). There, our Appellate Court determined that "the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." Id., 61 Conn. App. 358.
In the present case, McLean argues that the allegations involve medical issues regarding the level of supervision required of Meriano and that CT Page 9881 expert testimony is necessary to determine the applicable standard of care and, therefore, the plaintiff's claims sound in medical malpractice. "Medical malpractice claims do not necessarily require expert testimony. Although a court requires expert testimony to establish the relevant standard of care in most cases; [s]ome aspects of a medical malpractice action are considered to be within the realm of a jury's knowledge and, thus, do not require expert testimony. The characterization of a claim as ordinary negligence or medical malpractice, therefore, does not turn on whether expert testimony is required." (Citations omitted; internal quotation marks omitted.) Trimelv. Lawrence Memorial Hospital Rehabilitation Center, supra,61 Conn. App. 360.
The court notes, however, that expert testimony as to Meriano's condition may be helpful to establish allegations of ordinary negligence because such testimony may provide the trier of fact with evidence of the condition of the plaintiff relevant to whether the plaintiff should have been restrained or supervised. See Badrigian v. Elmcrest PsychiatricInstitute, 6 Conn. App. 383, 386-87, 505 A.2d 741 (1986). Similarly, expert testimony would be expected to be presented concerning other aspects of the complaint's allegations, such as those concerning the defendant's alleged failures to evaluate the appropriateness of Meriano's placement and continuing placement at Village Gate (first count, ¶ 10a, 10b). "[M]edical testimony may be appropriate as to whether the suspected illness or symptomology of [Meriano] was such as to produce particular risks of self harm and loss of control because of disorentation . . . which the [trier of fact] may determine [is] different than the degree of self-control which is to be expected of an ordinary [person of similar age]. Such limited testimony as to the degree of self control of [Meriano] does not, however, convert an ordinary negligence case into a medical malpractice claim." Mason v. Rockville General Hospital, supra, Superior Court, Docket No. 068416. Accordingly, the likelihood of expert testimony does not necessitate a finding that the plaintiffs claims sound in medical malpractice.
"The rule of law that distinguishes between medical malpractice and ordinary negligence requires a determination of whether the injury alleged occurred during treatment because of a negligent act or omission that was substantially related to treatment." Trimel v. Lawrence Memorial Hospital Rehabilitation Center, supra, 61 Conn. App. 360. The court in Trimel used a Supreme Court case, Levett v. Etkind,158 Conn. 567, 573, 265 A.2d 70 (1969), and an Appellate Court case,Badrigian v. Elmcrest Psychiatric Institute, Inc., supra, 6 Conn. App. 383, to illustrate the distinction between allegations that constitute medical malpractice and those that sound in ordinary negligence. The court inLevett held that, when a person is in a physician's office as a patient, CT Page 9882 the determination of whether the patient needed help disrobing and what course of conduct to pursue called for a medical judgment on the part of the physician predicated on his knowledge of her physical and mental condition on that day. See Trimel v. Lawrence Memorial HospitalRehabilitation Center, supra, 61 Conn. App. 361. On the other hand, inBadrigian, the court held that an outpatient on his lunch break from scheduled treatment who was encouraged to cross a highway to get lunch at the facility's cafeteria and was subsequently struck and killed by a passing automobile sounded in ordinary negligence, not medical malpractice. See Trimel v. Lawrence Memorial Hospital RehabilitationCenter, supra, 61 Conn. App. 363. "The mere fact that the treatment facility encouraged the patient to eat at its facility, which was designed in such a way as to require patients to cross a major highway, did not make meals a part of the treatment and thereby transform the claim into one sounding in medical malpractice. The facility in Badrigian owed a duty to any customer to provide a safe facility, not just to patients, and in failing to do so the plaintiff properly asserted a claim of ordinary negligence." Id.
The present case is more analogous to Badrigian than Levett. Here, as in Badrigian, there are no allegations that the decedent's injury occurred during medical treatment because of a negligent act or omission that was substantially related to medical treatment. The plaintiff alleges that the injuries occurred at 8 p.m, not during a time when Meriano was receiving medical treatment. McLean argues that Meriano was an "in-patient, admitted to the facility at the time of the incident as a `full-time' patient"; (Reply Memorandum of Law in Support of Motion to Strike, April 4, 2001, p. 6.) (Reply); and, therefore, was receiving medical treatment twenty-four hours a day. The court disagrees with McLean's characterization of the allegations contained in the complaint. The plaintiff alleges that Meriano signed a contract for assisted living services, including, but not limited to, the "establishment of a safe plan of care for 24 hours with direct hands on care not exceeding 1 1/2 hours a day." (Complaint, Exhibit A, p. 1.) Therefore, the court finds, based on the allegations of this complaint, that although she was assured a safe plan of care for twenty-four hours, Meriano was to receive direct hands on medical care for not more than one and one-half hours a day.
McLean also argues; (Reply pp. 13-15); that there is no allegation that the stairway itself was unsafe, and the complaint's allegations concerning McLean's alleged duty to secure the stairway or to place an alarm on its door depend upon the plaintiffs medical condition and a medical assessment of that condition. As a result, McLean contends that any duty owed to Meriano arose out of the patient-health care provider relationship and involved medical judgment, making this a claim for medical malpractice. Again, the analogy to Badrigan, recently utilized by CT Page 9883 our Appellate Court in Trimel, is appropriate. In Badrigan, there apparently was no allegation made that for persons who were not mentally ill it was unsafe to cross the highway without supervision. The evidence there "related to the mental condition of the decedent and, in turn, whether the defendant should have known that he needed assistance in crossing the highway. The court correctly decided that this was not a medical malpractice action, but an action sounding in ordinary negligence and subject to proof of the standard of care owed by a reasonably prudent person under the particular facts and circumstances." Badrigan v. ElmcrestPsychiatric Institute, Inc., supra, 6 Conn. App. 386.
Because the present complaint does not allege that Meriano's injury occurred during the one and one-half hours of treatment or arose from it, the complaint does not sound in medical malpractice. Reading the plaintiffs allegations, in the present case, in a light most favorable to sustaining the complaint; see Dodd v. Middlesex Mutual Assurance Co., supra, 242 Conn. 378; the court finds that the plaintiff's allegations amount to no more than ordinary negligence and a good faith certificate need not be filed.
 IV CONCLUSION
Accordingly, the defendant's motion to strike counts one and two of the plaintiffs complaint is hereby denied. It is so ordered.
BY THE COURT,
 ___________________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT